UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

DAVID CARMONA,

Defendant.

Case No. 1:22-cr-00551 (JLR)

**<u>MEMORANDUM OPINION
AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Defendant David Carmona ("Carmona" or "Defendant") pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Dkt. 280 ("Judgment") at 1; Dkt. 125 ("Plea Tr."). He was subsequently sentenced to a term of imprisonment of 121 months, to be followed by a term of supervised release of 3 years. Judgment at 2-3. At the sentencing hearing, the Court awarded forfeiture and restitution. Dkt. 292 ("Sentencing Tr.") 95:24-96:9. Carmona conceded $329,464.24 in forfeiture based on the amounts in two Bank of America accounts but objected to additional forfeiture amounts without more substantiation from the Government. *Id.* at 55:22-56:3. The Court requested that the Government provide documentation substantiating the requested forfeiture and restitution amounts, and deferred determination of the final amounts. *Id.* at 56:4-16. The Government thereafter identified the discovery that supported the requested amounts. Now before the Court are the Government's proposed orders of forfeiture and restitution, *see* Dkt. 340-1 ("Proposed Order of Forfeiture"); Dkt. 351-1 ("Proposed Order of Restitution"), and Carmona's objections thereto, *see* Dkt. 334 ("Forfeiture Obj."); Dkt. 347 ("Restitution Obj."); Dkt. 356 ("Second Restitution Obj."). The Government seeks the entry of an order of restitution in the amount of $914,661, and an order of forfeiture in the amount of $3,761,961.44. *See* Proposed Order of Restitution; Proposed Order of Forfeiture.

For the reasons set forth below, the Court will enter orders of restitution and forfeiture by separate orders, with some modifications to the amounts requested by the Government.[1]

## BACKGROUND

### I.    Factual Background

Carmona, along with five co-defendants, was charged with conspiring to commit wire fraud in violation of 18 U.S.C. § 1349.  *See* Dkt. 2.  This charge arose from Carmona's leadership of and involvement in IcomTech, a business he founded, which was purportedly engaged in the business of trading and mining cryptocurrency but instead was a fraudulent multi-level-marketing Ponzi scheme.  Carmona and other IcomTech leaders took money from investors, representing that they were going to invest the funds in cryptocurrency, but instead kept the money for personal use, to pay for events, and to pay for promotions for the scheme. IcomTech used promoters to solicit alleged investments from victims.  Victims purchased investment products using cash, checks, and wire transfers.  The scheme targeted many Spanish-speaking individuals.  In pleading guilty to conspiracy to commit wire fraud, Carmona admitted to undertaking these acts in furtherance of the conspiracy.

### II.    Procedural History

Following the entry of Carmona's sentence, the Government sought and received extensions of time to present the Court with the Proposed Restitution Order, *see* Dkts. 328,

---

[1] The Court retains power to enter an order of restitution outside of the ninety-day deadline set by 18 U.S.C. § 3664(d)(5), which expired on January 2, 2025, since at sentencing it "made clear prior to the deadline's expiration" that it would order restitution and left open only the amount to be determined, and because there is no prejudice to the Defendant.  *United States v. Gushlak*, 728 F.3d 184, 191 (2d Cir. 2013) (quoting *Dolan v. United States*, 560 U.S. 605, 608 (2010)); *see* Sentencing Tr. 95:24-96:2.  Indeed, additional time was necessary to allow the Defendant time to review the documentation and address the Government's submissions.  *See* Dkt. 352.

2

329, 338, 339; and sought and received extensions of time to present the Court with the Proposed Forfeiture Order, *see* Dkts. 283, 285.

On November 4, 2024, the Government filed a proposed order of forfeiture. Dkt. 311. Carmona sought and received extensions of time to respond to that proposed order, *see* Dkts. 312, 313, 322, 324; and filed objections to the proposed order on December 3, 2024, *see* Forfeiture Obj. The Government responded to Carmona's objections on December 10, 2024, Dkt. 340 ("Gov't Forfeiture Response"), and submitted a revised Proposed Order of Forfeiture that included an additional $108,225 from a Bank of America account that the Court had previously ordered forfeited during sentencing. *See* Gov't Forfeiture Response at 1; Judgment at 7; Proposed Order of Forfeiture at 2. The Court directed the Government to submit documentation of the analysis underlying its Proposed Order of Forfeiture, Dkt. 355, which the Government did on January 15, 2025, Dkt. 358.

On December 20, 2024, the Government filed a Proposed Order of Restitution, which initially sought a total amount of $863,000. Dkt. 346-1. Carmona submitted his objections on December 23, 2024, *see* Restitution Obj., and the Court directed the Government to submit documentation substantiating its restitution request by December 30, 2024, Dkt. 348. After requesting and receiving an extension of time to January 3, 2025, Dkt. 350, the Government submitted that documentation, a response to Carmona's objections, and a revised Proposed Order of Restitution, seeking a total of $914,661. *See* Dkt. 351 ("Gov't Restitution Response"); Proposed Order of Restitution. The Court directed Carmona to file any response to the Proposed Order of Restitution by January 9, 2025, Dkt. 352, and Carmona filed a second set of objections by that date, *see* Second Restitution Obj.

Carmona did not request a hearing on restitution or forfeiture.

3

## DISCUSSION

The Government requests that restitution be ordered in the total amount of $914,661 to twenty-four (24) identified victims of Carmona's conspiracy. Gov't Restitution Response. The Government also requests that an order of forfeiture be issued for $3,761,961.44. *See* Proposed Order of Forfeiture. Carmona objects to both proposed orders. *See* Restitution Obj.; Second Restitution Obj.; Forfeiture Obj. The Court will discuss restitution before discussing forfeiture.

### I. Restitution

#### A. Legal Standard

The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, provides for mandatory restitution in all sentencing proceedings or plea agreements where the offense was "committed by fraud or deceit" and "an identifiable victim or victims has suffered a physical injury or pecuniary loss." *Id.* § 3663A(c)(1)(A)(ii), (c)(1)(B). "The 'primary and overarching goal of the MVRA is to make victims of crime whole' to 'compensate these victims for their losses and to restore the[m] to their original state of well-being.'" *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015) (alteration in original) (quoting *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011)).

"Restitution is appropriate for any 'victim' of the defendant's offense of conviction." *United States v. Velissaris*, No. 22-cr-0015 (DLC), 2023 WL 4702049, at *7 (S.D.N.Y. July 24, 2023) (quoting 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(1)), *aff'd*, No. 23-6379, 2024 WL 4502001 (2d Cir. Oct. 16, 2024) (summary order). The amount of restitution to be ordered is the "amount of loss caused by the specific conduct forming the basis for the offense of conviction." *United States v. Gushlak*, 728 F.3d 184, 195 n.7 (2d Cir. 2013) (quoting *United States v. Silkowski*, 32 F.3d 682, 688 (2d Cir. 1994)). The Government bears the burden of

4

establishing the loss amount, and "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *United States v. Bahel*, 662 F.3d 610, 647 (2d Cir. 2011) (quoting 18 U.S.C. § 3664(e)). "The district court need not establish the loss with precision but rather 'need only make a reasonable estimate of the loss, given the available information.'" *United States v. Tsirlina*, No. 12-cr-00305 (RJD), 2014 WL 6632477, at *2 (E.D.N.Y. Nov. 21, 2014) (quoting *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000)).

### B. Carmona's Objections

Carmona objects to the Proposed Order of Restitution on the grounds that the Government's proposed restitution amount does not correspond with discovery material related to some of the identified victims, though he concedes the amounts as to others. Restitution Obj. at 1-2; *see* Gov't Restitution Response at 2-8 (shading conceded amounts in gray). Specifically, Carmona concedes the restitution amounts sought by the Government for BC, MF, AG, DMG, NP, AR, MSG, and BS. Restitution Obj. at 1-2.

The Government has provided the Court with documentation in support of the contested restitution amounts, including victims' interviews with the Department of Homeland Security Investigations ("HSI"), emails to HSI, documents and testimony from the trial of Carmona's co-conspirators, and sworn affidavits submitted in connection with sentencings in this case. *See* Dkt. 351-2 to -20; Dkt. 240-1 at 3, 5l; GX 1303 A-T; GX 1800-T ("Fire Team Spreadsheet"); GXs 1602 to 1606; GXs 1608 to 1611; Dkts. 171, 173, 175, 177, 179, 181, 183, 185, 187 (collectively, "Trial Tr."). The Second Circuit has explained that "[i]n resolving a dispute related to sentencing, the court may rely on information that would not be admissible under the Federal Rules of Evidence, 'provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v.*

*Schwanborn*, 542 F. App'x 87, 88 (2d Cir. 2013) (summary order) (quoting U.S.S.G. § 6A1.3(a)). The Court will review each of the contested restitution requests to evaluate whether there is adequate substantiation to find that they are reasonable estimates of the loss amounts.

The restitution amounts for VC, RH, LM, RP, SP, DS, and MW are supported by records of their interviews with HSI, which the Court finds have sufficient indicia of reliability; trial testimony; and/or reference to the Fire Team Spreadsheet and GX 1303 A-T, which were introduced at the trial of Carmona's co-conspirators; as well as affidavits submitted in connection with sentencing. Thus, the Court concludes that the restitution amounts for these victims are supported by a preponderance of the evidence.

Carmona primarily argues that loss amounts proposed by the Government are unreliable where they are based in any part on unsworn emails to the HSI in response to a November 2024 email asking victims to list the "[a]mount of money (USD) lost as a result of your investment in Icomtech" for purposes of "potential restitution to recover the financial losses you suffered." *See, e.g.*, Dkt. 351-11. The Court does not agree. EJ, ND, AC, YE, and DC (via his spouse) emailed their loss amounts to HSI and these amounts are supported by other indicia of reliability, including the Fire Team Spreadsheet and GX 1303 A-T. Specifically, EJ, ND, and AC reported losses to HSI in the amounts of $15,000, between $30,000 and $50,000, and $40,000, respectively, and the Fire Team Spreadsheet and/or GX 1303 A-T reflect balances of more than these amounts. *See* Proposed Order of Restitution; GX 1303 A-T; Fire Team Spreadsheet. YE's reported loss amount of $63,600 to HSI, Dkt. 351-9, is also commensurate with her balance of $57,593.98 that is listed on GX 1303 A-T. *See* GX 1303 A-T. During her earlier HSI interview, she also detailed her and her family's investments of $65,000 in IcomTech. Dkt. 351-8. Finally, DC's spouse (AG) sent an email to

6

HSI detailing her husband's loss of $15,000, as well as her own.  Dkt. 351-5.  Carmona concedes that DC's spouse's loss of $13,000 is recoverable based on her report to HSI, and therefore the Court sees no reason to find that her report of her husband's loss is unreliable. DC and his spouse both appear on the GX 1303 A-T spreadsheet as investors as well.  Thus, the Court finds that the aforementioned amounts are supported by a preponderance of the evidence.  *See United States v. Pinto*, 675 F. App'x 64, 66 (2d Cir. 2017) (summary order) (government adequately supported its loss calculations by providing, among other documents, a spreadsheet detailing client funds).

The Court will, however, reduce the loss amounts requested for three victims: JGSA, VI, and RN.  JSGA responded to an HSI email that he lost $35,000, Dkt. 351-2, but GX 1303 A-T reflects a balance of $10,724.40, and JGSA does not appear in the Fire Teams Spreadsheet.  Given this inconsistency, and the lack of any other substantiation, including even a sworn statement, the Court will reduce the loss amount for JGSA to $10,724.40.  *See United States v. Simmons*, 544 F. App'x 21, 23-24 (2d Cir. 2013) (summary order) (district court abused its discretion in awarding restitution to a victim based solely on a lump sum in an unsworn letter).  Similarly, with respect to VI, the Government states that she represented a $25,000 loss both in her email response to HSI, Dkt. 351-11, and during her 2023 interview with HIS, Dkt. 351-10.  Gov't Restitution Response at 3.  However, VI's HSI interview report indicates that she reported a loss to IcomTech of only $1,000, along with reimbursement of her friends' lost investments of $900.  *See* Dkt. 351-10 at 3.  Neither GX 1303 A-T nor the Fire Team spreadsheet reflect any investments by VI.  The Court will therefore reduce the loss amount for VI to $1,900.  Finally, the Government proposes a loss amount of $80,000 for RN based on her response to HSI's 2024 email, Dkt. 151-17.  Gov't Restitution Response at 6. Carmona concedes a loss of $1,000.  Restitution Obj. at 1.  During an extensive 2021

interview with HSI where RN described in detail her IcomTech experience, much closer in time to the events in question, RN did not detail losses reaching $80,000, and instead reported losing only $1,000 herself (and purchasing memberships for two friends). *See* Dkt. 351-18. The GX 1303 A-T spreadsheet reflects only $1,933.54 as the sum of the balances under her name. The Government points to RN's "Icoms," IcomTech's cryptocurrency, listed on GX 1303 A-T, Gov't Restitution Response at 6, but does not provide a methodology for quantifying that currency. Because of the large discrepancy, the Court will reduce the loss amount for RN to $1,933.54.

The Government next seeks restitution in the amount of $80,061 for KM — a combination of a personal loss amount of $43,500, and $35,561 for the amounts that KM reimbursed to people in her downlines. Gov't Restitution Response at 5. Carmona concedes restitution of $39,500 for KM. Restitution Obj. at 1. The Court finds that a loss amount of $80,601 is proper under the MVRA. First, KM may receive restitution for her reimbursement of IcomTech users in her downlines. Under the MVRA, "where a third party has assumed the victim's losses by reimbursing the victim, the court must order a defendant to pay restitution directly to that third party." *Thompson*, 792 F.3d at 278 (citing 18 U.S.C. § 3664(j)(i)). The Court concludes that the individuals in KM's downline are "victims" within the meaning of the MVRA. *See* 18 U.S.C. § 3663A(a)(2) (defining "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"); Trial Tr. 1153:13-25 (KM: reporting that her loss in IcomTech was about $43,000 and that she and her downlines lost "about $118,000"); Trial Tr. 1194:8-14 (discussing GX 1647, in which KM stated that she had paid more than $30,000 back to her downlines). Here, KM took it upon herself to repay her downlines, assuming their losses. She is therefore eligible for restitution for these amounts. Second, KM's personal loss of $43,500 is supported

8

by a preponderance of the evidence.  KM testified under oath at trial that she invested "about

$43,000" in IcomTech, Trial Tr. 1153:13-21, and reported $43,500 in her interview with HSI,

Dkt. 351-13.  These amounts are supported by the Fire Team spreadsheet and GX 1303 A-T,

which list investments amounting to $39,500 and $40,730.45, respectively.  The Court

therefore approves the proposed loss amount of $80,061 for KM.

Based on the foregoing, the Court will award $789,218.94 in restitution instead of the

$914,661 sought by the Government.  The Court finds that the Government has satisfied its

burden of demonstrating this loss amount by a preponderance of the evidence, and that the

information it has submitted permits the Court to "make a reasonable estimate of the loss,

given the available information." *Tsirlina*, 2014 WL 6632477, at *2 (quoting *Carboni*, 204

F.3d at 46).  This is a conservative total in the context of the foreseeable loss amount of this

conspiracy, which the Court found exceeded $25,000,000.  *See* Sentencing Tr. 29:12-14.  The

Government has sought restitution for only those victims that it was able to contact and

confirm their loss amount for purposes of restitution, Gov't Restitution Response at 2, and the

Court agrees that the restitution awarded likely understates the total losses to the many victims

of the IcomTech scheme.[2]

## II.    Forfeiture

The Government next seeks a forfeiture money judgment in the amount of

$3,761,961.44 of U.S. currency.  Proposed Order of Forfeiture at 1-2.  This amount is based

---

[2] Many people were significantly harmed by this Ponzi scheme.  Numerous victims provided heartfelt and emotional testimony at trial and during sentencing hearings about the financial losses they and others incurred and the devastating impact of this fraud.  Any aforementioned reductions in the restitution amounts here are not meant to conclude that the individual victims did not suffer the losses requested by the Government, but rather that the Government did not meet its burden of presenting proof as to those disputed losses by a preponderance of the evidence by submitting, for example, even sworn statements.

on the Government's analysis of: (1) four bank accounts and (2) cryptocurrency addresses

associated with Carmona that the Government identified during its investigation.  *See* Dkt.

311; Gov't Forfeiture Response.  Carmona proposes a forfeiture amount of $419,389.95.

Forfeiture Obj. at 2.

### A. Legal Standard

Under 18 U.S.C. § 981, "[a]ny property, real or personal, which constitutes or is

derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity'

or a conspiracy to commit such offense," including wire fraud, is subject to forfeiture.  *Id.*

§ 981(a)(1)(C); *see id.* §§ 1956(c)(7)(A), 1961(1).  "Because the Second Circuit has held that

wire fraud is 'unlawful activity' under § 1956(c)(7), 'proceeds' are defined as 'property of any

kind obtained directly or indirectly, as the result of the commission of the offense giving rise

to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit

realized from the offense.'"  *United States v. Kenner*, 443 F. Supp. 3d 354, 363 (E.D.N.Y.

2020) (citing *United States v. Szur*, 289 F.3d 200, 213 (2d. Cir. 2002)) (quoting 18 U.S.C.

§ 981(a)(2)(A)).

The government bears the burden of proving facts supporting forfeiture by a

preponderance of the evidence.  *United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004);

*accord United States v. Fishman*, No. 20-cr-00160 (MKV), 2023 WL 4409020, at *9

(S.D.N.Y. July 7, 2023).  Courts need not determine "the loss with precision but rather need

only make a reasonable estimate of the loss, given the available information."  *United States*

*v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) (quoting *United States v. Uddin*, 551 F.3d 176, 180

(2d Cir. 2009)).  As with restitution, "[i]n resolving a dispute related to sentencing, the court

may rely on information that would not be admissible under the Federal Rules of Evidence,

'provided that the information has sufficient indicia of reliability to support its probable

accuracy.'" *Schwanborn*, 542 F. App'x at 88 (quoting U.S.S.G. § 6A1.3(a)). However, the

sentencing court may not rely only on "an unsubstantiated government claim" or on

representations by the government about what the evidence shows to calculate forfeiture.

*United States v. Rainford*, 110 F.4th 455, 489 (2d Cir. 2024) (explaining that it was clear error

for the district court to rely "only on the representations of the government" about a co-

conspirator's statements without corroboration from "notes from the meeting" or that

witness's testimony, since "the government's word is not evidence").

### B. Carmona's Objections

Carmona objects to the Proposed Order of Forfeiture on three grounds: (1) the

proposed forfeiture amounts based on the designated bank accounts are not supported by the

Government's discovery, Forfeiture Obj. at 1; (2) the forfeiture amounts based on the

cryptocurrency transactions are not supported by the evidence, *id.* at 1-2; and (3) the

Government has not shown that Carmona personally obtained the entire forfeiture amount, *id.*

The Court will address each argument in turn.

#### 1. Bank Accounts

The Government has identified five bank accounts through which it asserts proceeds

of the IcomTech scheme can be traced for purposes of forfeiture: a Bank of America account

ending in 1689 (the "1689 Account"), a Bank of America account ending in 3101 (the "3101

Account"), a Bank of America account ending in 3114 (the "3114 Account"), and a JPMorgan

Chase account ending in 6257 (the "Chase Account"). Gov't Forfeiture Response at 1-2. At

sentencing, the Court previously ordered $108,225.00 to be forfeited from a Bank of America

account ending in 2338 because Carmona's counsel represented that his client was "not

disputing the seized amounts in the bank accounts," including that account. Sentencing Tr.

55:11-12, 96:3-9. Carmona likewise conceded forfeiture of $221,239.24 from the 1689

Account.  *Id.* at 55:11-12. Carmona further concedes that the proposed amount based on the 3114 Account should be forfeited.  Forfeiture Obj. at 1.

The Government identified for Carmona the location of the bank account records in the discovery produced.  Gov't Forfeiture Response at 3.  The Court has reviewed the Excel spreadsheets provided by the Government that summarize the inflows into the 1689 and 3101 Accounts, as well as the Chase Account.  The "originators" of amounts flowing into these accounts are identified in the spreadsheet.  The Court has been able to match the majority of these "originators" with an investor in GX 1303 A-T or the Fire Team Spreadsheet.  Inflows into the accounts from other originators reflect indicia of the IcomTech scheme: for example, they were by wire transfers or cashiers' checks; they were in rounded dollar amounts consistent with IcomTech's investment packages; and/or were sent from individuals with Hispanic names, which is consistent with the profile of the typical IcomTech victim.  The Government also included only amounts that flowed into the accounts during the life of the IcomTech scheme from 2018 to 2019.  Therefore, the majority of the amounts in the three accounts are attributable to the IcomTech scheme.

However, there are a few discrepancies.  In the Chase Account, several originators are either labeled "unspecified deposit" or are bank transfers from unidentified bank accounts with no identifying information that provides a link to the IcomTech scheme.  Therefore, the Court will reduce the forfeiture amount from the Chase Account by those amounts.  With respect to the 1689 and 3101 Accounts, the Government proposes including in the forfeiture amount (1) two sums that are labeled "TLR Transfers from Unknown," and (2) an originator labeled only "[Illegible]."  The Government does not provide any basis for the Court to conclude that these transactions were part of the IcomTech scheme beyond its representation that those transactions should be attributed to the scheme.  *See Rainford*, 110 F.4th at 489

12

(district court's calculation of forfeiture was clearly erroneous where it relied only on "the government's word" in calculating forfeiture). As a consequence, the Court excludes these amounts from its calculation of forfeiture.

Thus, the Court will order forfeiture of $94,925.71 based on the 3114 Account, as conceded; $290,505.80 based on the 3101 Account; $484,305.00 based on the 1689 Account; $108,225.00 from the Bank of America account ending in 2338, as already conceded and ordered; and $219,856.62 based on the Chase Account.[3]

### 2. Cryptocurrency Accounts and Transactions

Carmona next objects to the evidence of cryptocurrency accounts and transactions. Forfeiture Obj. at 1. Specifically, he contends that the cryptocurrency transactions involve people who are not named in the indictment and that there is not a clear connection between those transactions and Carmona. *Id.* The Court will consider this argument before discussing its calculation of forfeiture based on the cryptocurrency accounts.

First, the law does not support Carmona's claim that cryptocurrency transactions related to unnamed or unindicted co-conspirators cannot be included in the forfeiture amount. Under 18 U.S.C. § 981(a)(2)(A), proceeds are "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." "Essentially, '[p]roceeds are property that a person would not have but for the criminal offense.'" *United States v. Kenner*, 443 F. Supp. 3d 354, 363 (E.D.N.Y. 2020) (alteration in original) (quoting *United States v. Grant*, No. 05-cr-00192 (NRB), 2008 WL

_____

[3] Notably, Carmona's reported sources of legitimate income during this time period, including the sale of toiletries and some limited cryptocurrency trading (PSR ¶¶ 105-06), falls far short of the amounts in the aforementioned accounts.

4376365, at *2 n.1 (S.D.N.Y. Sept. 28, 2008)).  While the Government must demonstrate a "requisite nexus between the property and the offense," "[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketing enterprise, the government need only establish that the forfeited assets have the 'requisite nexus' to that scheme, conspiracy, or enterprise."  *United States v. Kahale*, No. 09-cr-00159 (KAM), 2010 WL 3851987, at *30 (E.D.N.Y. Sept. 27, 2010) (first quoting Fed. R. Crim. P. 32.2(b)(1)(A); then quoting *United States v. Capoccia*, 503 F.3d 103, 117-18 (2d Cir. 2007)), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (summary order).  Indeed, "the 'general rule' that forfeiture is limited to a defendant's actual gain 'is somewhat modified by the principle that a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant.'"  *United States v. Jiau*, 624 F. App'x 771, 773 (2d Cir. 2015) (summary order) (quoting *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012)).

As a result, transactions by other members of the IcomTech scheme can be included in the forfeiture amount provided that the Government establishes that the assets have the "requisite nexus" with the scheme and were reasonably foreseeable to Carmona.  The Government has done so.  The Government represents that the cryptocurrency is tied to cryptocurrency wallets that Carmona provided to IcomTech co-conspirators "for the very purpose of receiving IcomTech funds."  Gov't Forfeiture Response at 4; *see also* Sentencing Tr. 10:10-15.  Trial testimony demonstrated that Carmona provided such wallets to those involved with the scheme.  For example, Moses Valdez, a cooperating co-conspirator, testified that the members of the scheme would deposit Bitcoin from victims into IcomTech's company wallet, Trial Tr. 335:5-336:20, and that he was given a Bitcoin wallet when he

joined IcomTech, *id.* at 433:25-434:7.  The Court finds that the Government has established that it was reasonably foreseeable to Carmona that the victims would transfer Bitcoin to wallets that he provided to co-conspirators or recruiters.  Thus, the proceeds have a nexus to the IcomTech conspiracy and were reasonably foreseeable to Carmona.

The Court next considers whether the amount proposed for forfeiture based on the cryptocurrency accounts has been proven by a preponderance of the evidence.  Carmona has not objected to the Government's methodology.  The Government has submitted documentation of cryptocurrency addresses and transactions that occurred in different blockchains, as well as the approximate value of the Bitcoin transaction.  The Government used daily average prices of Bitcoin to calculate the value of the transactions in U.S. dollars for each identified transaction.  *See* Sentencing Tr. 10:16-23.  The Court finds that this is a reasonable methodology for calculating the value of the Bitcoin transferred into the identified wallets.  The sum of the Bitcoin transactions between August 2018 and December 2019, the relevant time period for the IcomTech conspiracy, is $2,299,253.96.  The Court will order forfeiture in that amount.

### 3.    Carmona's Final Objection

Finally, Carmona argues that the evidence does not show that he personally obtained the entire forfeiture amount as a result of this scheme, which he argues "must be shown by the government in order to warrant the forfeiture request."  Forfeiture Obj. at 1-2.  The Court does not agree.  As explained above, because Carmona pleaded guilty to conspiracy to commit wire fraud, the Court may order a forfeiture amount that includes proceeds from the entire conspiracy, provided that the actions generating the proceeds were reasonably foreseeable to Carmona.  Indeed, in *United States v. Jiau*, the Second Circuit rejected the argument that the forfeiture amount from a conspiracy to commit securities fraud was limited to the amount that

the defendant "personally received . . . from the scheme," emphasizing that the rule that forfeiture is limited to a defendant's actual gain is modified in a conspiracy. 624 F. App'x at 773. So too here. The Court may enter a forfeiture amount greater than the amount that Carmona "personally received" so long as the proceeds of his co-conspirators were reasonably foreseeable to him. *See id.* Carmona does not assert that the proceeds traceable to the cryptocurrency accounts or bank accounts were not reasonably foreseeable to him — rather, his objection to the forfeiture amount is that the Court may not enter forfeiture unless Carmona personally obtained the entire amount. Because the Court finds a nexus between the IcomTech conspiracy and the bank accounts, as well as the proceeds in the cryptocurrency accounts, those amounts are properly included in the forfeiture amount.

## CONCLUSION

For the foregoing reasons, the Court will enter a separate restitution order in accordance with this Opinion in the total amount of $789,218.94 and a separate forfeiture order in a total amount of $3,605,297.09 of U.S. currency. The Clerk of Court is respectfully requested to terminate the motions at Dkts. 311, 346, 347, and 356.

Dated: January 28, 2025
      New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

16