UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>DAVID BREND and GUSTAVO RODRIGUEZ,<br>Defendants. | Case No. 1:22-cr-00551 (JLR)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Following a jury trial, Defendants David Brend and Gustavo Rodriguez were convicted of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *See* Dkt. 332 ("Brend Judgment") at 1; Dkt. 309 ("Rodriguez Judgment") at 1; Dkts. 173, 175, 177, 179, 181, 183, 185, 187 ("Trial Tr."). Brend was subsequently sentenced to a term of imprisonment of 120 months, to be followed by a term of supervised release of 3 years. Brend Judgment at 2-3. Rodriguez was sentenced to a term of imprisonment of 96 months, also to be followed by a term of supervised release of 3 years. Rodriguez Judgment at 2-3. At both sentencing hearings, the Court ordered restitution, but deferred determination of the final amount. Dkt. 353 ("Brend Sentencing Tr.") 88:13-16; Dkt. 336 ("Rodriguez Sentencing Tr.") 394:18-19, 397:22-23. In the meantime, the Court received briefing on the restitution owed by codefendant David Carmona, and on January 28, 2025, issued a memorandum opinion and order finding that the victims of the IcomTech scheme were owed restitution in the total amount of $789,218.94. Dkt. 360. The Court entered an order of restitution for Carmona imposing joint and several liability with his coconspirators, including Brend and Rodriguez. Dkt. 362 at 1-2.

Now before the Court are the government's proposed orders of restitution for Brend and Rodriguez, and Brend's objections thereto. Dkt. 365-1 ("Rodriguez Proposed

Restitution"); Dkt. 365-2 ("Brend Proposed Restitution"); Dkt. 371 ("Brend Obj."). Rodriguez did not object or otherwise respond to the Government's proposed order. Neither Brend nor Rodriguez requested a hearing on restitution. The Government seeks the entry of orders of restitution that are substantially identical to the restitution order entered against Carmona, each in the total amount of $789,218.94. Rodriguez Proposed Order at 1; Brend Proposed Order at 1; Dkt. 365 ("Mot.") at 1.[1]

## BACKGROUND

Brend and Rodriguez, along with four codefendants, were charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *See* Dkt. 2. The charge arose from their involvement in IcomTech, a company that claimed to be engaged in the business of trading and mining cryptocurrency, but that instead operated a multi-level-marketing ("MLM") Ponzi scheme. Victims purchased investment products using cash, checks, and wire transfers. Beginning at least as early as January 2019, Brend worked as a promoter for the IcomTech scheme, recruiting victim-investors to give money to IcomTech, appearing in promotional flyers as a "top master," and directing investors in his "downline" to send payments directly to his company, True Credit Repair LLC. *See* Trial Tr. 502:2-505:16, 960:21-963:1, 1124:2-16; Dkt. 319-1 ¶ 8. Beginning at least as early as May 2018, Rodriguez worked with Carmona to create a "back office" system and website for IcomTech that reflected false continual

---

[1] The Court retains power to enter an order of restitution outside of the 90-day deadline set by 18 U.S.C. § 3664(d)(5), which expired for Rodriguez on January 29, 2025, since at sentencing, the Court "made clear prior to the deadline's expiration that it would order restitution" and left open only the amount to be determined, and because there is no prejudice to the Defendant. *United States v. Gushlak*, 728 F.3d 184, 191 (2d Cir. 2013) (quoting *Dolan v. United States*, 560 U.S. 605, 608 (2010)); *see* Rodriguez Sentencing Tr. 394:18-19, 397:22-23. The 90-day deadline has not yet expired for Brend. *See generally* Brend Judgment (signed December 2, 2024). Indeed, additional time was necessary to allow Brend and Rodriguez time to respond to the Government's submissions. *See* Dkt. 367.

increased earnings for investors. Rodriguez Sentencing Tr. 301:24-302:18; *see also id.* 332:9-18; Dkt. 272 ¶¶ 15,18, 23.

## DISCUSSION

The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, provides for mandatory restitution in all sentencing proceedings or plea agreements where the offense was "committed by fraud or deceit" and "an identifiable victim or victims has suffered a physical injury or pecuniary loss." *Id.* § 3663A(c)(1)(A)(ii), (c)(1)(B). "The 'primary and overarching goal of the MVRA is to make victims of crime whole' to 'compensate these victims for their losses and to restore the[m] to their original state of well-being.'" *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015) (alteration in original) (quoting *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011)).

"Restitution is appropriate for any 'victim' of the defendant's offense of conviction." *United States v. Velissaris*, No. 22-cr-00105 (DLC), 2023 WL 4702049, at *7 (S.D.N.Y. July 24, 2023) (quoting 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(1)), *aff'd*, No. 23-6379, 2024 WL 4502001 (2d Cir. Oct. 16, 2024) (summary order). The amount of restitution to be ordered is the "amount of loss caused by the specific conduct forming the basis for the offense of conviction." *United States v. Gushlak*, 728 F.3d 184, 195 n.7 (2d Cir. 2013) (quoting *United States v. Silkowski*, 32 F.3d 682, 688 (2d Cir. 1994)). The Government bears the burden of establishing the loss amount, and "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *United States v. Bahel*, 662 F.3d 610, 647 (2d Cir. 2011) (quoting 18 U.S.C. § 3664(e)). "The district court need not establish the loss with precision but rather 'need only make a reasonable estimate of the loss, given the available information.'" *United States v. Tsirlina*, No. 13-cr-00305 (RJD), 2014

3

WL 6632477, at *2 (E.D.N.Y. Nov. 21, 2014) (quoting *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000)).

The "primary and overarching goal of the MVRA is to make victims of crime whole: to compensate these victims for their losses and to restore the[m] to their original state of well-being." *United States v. Yalincak*, 30 F.4th 115, 121 (2d Cir. 2022) (quoting *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015)).  The MVRA permits district courts to "make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants."  18 U.S.C. § 3664(h).

### A. Restitution as to Rodriguez

Rodriguez has not raised any objections to the Government's proposed order of restitution.  In imposing restitution on Carmona, the Court found that a restitution amount of $789,218.94 was supported by a preponderance of the evidence, and now incorporates its reasoning by reference here.  *See United States v. Carmona*, No. 22-cr-00551 (JLR), 2025 WL 315907, at *3-4 (S.D.N.Y. Jan. 28, 2025).

The Court also finds that Rodriguez should be jointly and severally liable for the entire proposed amount.  Rodriguez joined the IcomTech conspiracy at its inception in or around May 2018, when Carmona hired him to build IcomTech's website and online portal.  Dkt. 272 ¶¶ 15, 23.  The online platform he built reflected the fake investment proceeds and was used in the scheme by the coconspirators to defraud victims.  The losses to the victims were reasonably foreseeable to him.  Thus, he is jointly and severally liable for the total losses caused by the IcomTech conspiracy.  *See United States v. Boyd,* 222 F.3d 47, 51 (2d Cir. 2000) (per curiam) (affirming restitution order in case involving telemarketing scheme holding the defendant "liable for the reasonably foreseeable acts of all co-conspirators").  The Court will enter restitution in the total amount of $789,218.94 for Rodriguez.

**B. Brend's Objections to Restitution**

Brend has filed an objection to the proposed restitution order. He first asserts that the Government has not met its burden to show the total loss amount of $789,218.94 by a preponderance of the evidence. Dkt. 371 at 1. The Court does not agree. The Court painstakingly reviewed all of the evidence provided by the Government regarding the losses for each victim, *see, e.g.*, Dkt. 351, and found that it supports a loss amount of $789,218.94 by a preponderance of the evidence. *See Carmona*, 2025 WL 315907, at *4.[2]

Brend next contends that he should not be responsible for the entire restitution amount because he was not aware of the conspiracy and did not agree to jointly undertake any criminal activity. Dkt. 371 at 1-2. As the Court explained in rejecting near-identical arguments that Brend made opposing forfeiture and in his Rule 29 and 33 motions, the jury has already found Brend guilty of knowingly participating in the charged conspiracy, and the Court has denied Brend's post-trial motions. *See United States v. Brend*, No. 22-cr-00551 (JLR), 2024 WL 4491444, at *4-7 (S.D.N.Y. Oct. 15, 2025) (*Brend I*) (rejecting Federal Rule of Criminal Procedure 29 and 33 challenges to the sufficiency of the evidence); *United States v. Brend*, No. 22-cr-00551 (JLR), 2025 WL 369838, at *2 (S.D.N.Y. Feb. 3, 2025) (*Brend II*) (rejecting, in imposing forfeiture, Brend's argument that he was unaware of the conspiracy and was a victim himself). At least a third of the identified victims in the restitution order are directly attributable to Brend; they were included on the Fire Team Spreadsheet listing

---

[2] Brend's complaint that he is disadvantaged because the names of the 24 victims are "redacted" (Obj. at 3) is not well taken since the Government's proposed restitution order as to Brend is unredacted at Dkt. 365, and is available to the participants in the case. Moreover, the Court's prior memorandum opinion and order discussing the restitution evidence refers to the victims by their initials, Dkt. 360, which correspond to the victim list in the proposed restitution order for Brend, and cites to the Government's supporting evidence at Dkt. 351.

Brend's downline and/or submitted declarations stating their losses from the IcomTech conspiracy in connection with Brend's sentencing, *see* GX 1800 T at 2-8 (Fire Team Spreadsheet listing victims BC, ND, RH, KM, EJ, DS, and MF in Brend's downline); Dkt. 240-1 at 2, 4 (declarations of RH and MW). The Court (and the jury) found that Brend knowingly participated in the IcomTech conspiracy, and thus he can also be held jointly and severally liable for restitution for the reasonably foreseeable acts of his coconspirators. *See Boyd*, 222 F.3d at 51 (affirming restitution order in case involving telemarketing scheme holding the defendant "liable for the reasonably foreseeable acts of all co-conspirators"); *United States v. Smith*, 513 F. App'x 43, 45 (2d Cir. 2013) (summary order) (affirming restitution order in case involving device-access conspiracy ordering restitution for "all losses caused by [the defendant], as well as by the reasonably foreseeable actions of her coconspirators"); *United States v. Romano*, No. 09-cr-00170 (SJ) (VMS), 2022 WL 2666914, at *11 (E.D.N.Y. July 11, 2022) (joint and several restitution was proper for defendants who were members of wire and mail fraud conspiracy and were thus "liable for the reasonably foreseeable results of the actions of their coconspirators"), *aff'd*, No. 15-992 et al., 2022 WL 17097587 (2d Cir. Nov. 22, 2022); *United States v. Gioeli*, No. 08-cr-00240 (BMC), 2019 WL 6173421, at *7 (E.D.N.Y. Nov. 20, 2019) (similar). The Court already found at sentencing that a total loss amount of "at least $25 million" was foreseeable to Brend. *See* Brend Sentencing Tr. 25:20-26:16. Brend was not a minimal or minor participant in the scheme; rather, as the Court found during sentencing, he was a Top Master promoter, publicizing the fraud and recruiting many victims. *Id.* at 28:17-29:6, 34:20-35:9; *see also* GX 1600-A; GX 1103-T; GX 224 at 407-08. He personally met with Carmona, was featured on flyers with other promoters, conducted webinars to promote the scheme with the CEO of IcomTech, and knew that the scheme expanded well beyond his downlines. *See* Brend Sentencing Tr. 29:7-

6

22, 37:20-38:2; Trial Tr. 936:12-937:21; GX 1103-T; GX 1633 at 3.  He also remained with the conspiracy until IcomTech unraveled and even then tried to lull victims into not reporting the fraud and investing in other frauds.  *See* Brend Sentencing Tr. 28:17-29:6, 31:20-32:10, 80:5-15; *see also* Trial Tr. 512:1-3, 518:5-519:9, 520:2-24, 1148:11-1149:10.  The victims' losses at the hands of his co-conspirators were reasonably foreseeable to him.

Brend has not argued that any of the victim's losses were incurred before he joined the conspiracy, but even if they were, this does not persuade the Court that Brend is not responsible for the full restitution amount.  In the context of restitution, the Second Circuit has held that a defendant is "jointly and severally liable for the losses caused by the conspiracy after he joined it," and may be "liable for the reasonably foreseeable acts of all co-conspirators" prior to the defendant joining the conspiracy if he "knew or reasonably should have known about some or all of the conspiracy's past [criminal acts]."  *United States v. Bengis*, 783 F.3d 407, 413-14 (2d Cir. 2015) (quoting *Boyd*, 222 F.3d at 51); *accord United States v. Fiumano*, 721 F. App'x 45, 52 (2d Cir. 2018) (summary order) (affirming restitution award that held defendant liable for losses before he joined the conspiracy, since he "knew or reasonably should have known about some or all of the conspiracy's past [criminal conduct]" (alteration in original) (quoting *Bengis*, 783 F.3d at 413)).  Brend knew or reasonably should have known about earlier criminal acts and attendant losses by other victims given that, prior to joining IcomTech, Brend sent an associate a video clip about another MLM Ponzi scheme, TelexFree, structured similarly to IcomTech, detailing its features and fraudulent activities.  *See Brend I*, 2024 WL 4491444, at *4.  This shows that when he joined the conspiracy, Brend knew or should have known about IcomTech's past criminal conduct and how it was defrauding alleged investors.  He also knew when he joined that there were other promoters like him who had been recruiting victims well before he joined.  *See* Brend Sentencing

7

Tr. 29:7-22. Thus, he is properly liable for losses before he joined the conspiracy. *See United States v. OZ Afr. Mgmt. GP, LLC*, No. 16-cr-00515 (NGG), 2019 WL 4199904, at *7-8 (E.D.N.Y. Aug. 29, 2019) (imposing restitution for losses before the defendant joined the conspiracy where defendant "knew or reasonably should have known about" the acts of a coconspirator).

Finally, Brend argues that the Government relied on unreliable evidence, namely, the Fire Team Spreadsheet, GX 1800-T, and the Todos Los Usuarios Spreadsheet, GX 1300 A-T, in calculating the total loss amount. Brend Obj. at 2. Again, the Court "need not establish the loss with precision but rather 'need only make a reasonable estimate of the loss, given the available information.'" *Tsirlina*, 2014 WL 6632477, at *2 (quoting *Carboni*, 204 F.3d at 46). The Court already found the spreadsheets sufficiently reliable to use in calculating the total foreseeable loss amount. *See* Brend Sentencing Tr. 23:3-26:15. It also relied on those spreadsheets and found them sufficiently reliable in calculating the total restitution amount. *See Carmona*, 2025 WL 315907, at *3-4 (referencing the Fire Team Spreadsheet and GX 1300 A-T in calculating restitution).

For all of these reasons, the Court concludes that Brend should be held jointly and severally liable for the entire restitution amount of $789,218.94.

## CONCLUSION

For the foregoing reasons, the Court will enter, by separate orders, the proposed orders imposing restitution in the total amount of $789,218.94 for both Brend and Rodriguez.

Dated: February 28, 2025
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge